# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Norfolk Southern Railway Company, <br><br> Plaintiff, <br><br> v. <br><br> Soo Line Railroad Company, d/b/a Canadian Pacific Railway, et al. <br><br> Defendants. | Civil Case Number: 2:17-cv-15-JVB |

## OPINION AND ORDER

### A. Legal Standard

Norfolk Southern Railway Company sued Soo Line Railroad Company, Indiana Harbor Belt Railway Company, and The Consolidated Rail Corporation seeking declaratory judgment that Norfolk Southern has the right to terminate the Indiana Harbor Belt Interchange Agreement ("the Interchange Agreement"). Soo Line has moved to dismiss this case arguing that (1) the matter is not ripe because it lacks a case or controversy, and (2) this Court does not have primary jurisdiction.

### B. Background Facts

In June 2005, all the parties in this lawsuit entered into the Interchange Agreement granting operating rights to Soo Line and Harbor Belt over a four-mile portion of track to permit

for interchange between carriers.[1] Norfolk Southern and Consolidated Rail are signatories because they separately own the underlying four miles of tracks used for this interchange.

The Interchange Agreement contains a clause allowing Soo Line or Harbor Belt to terminate the agreement. This clause does not explicitly give Norfolk Southern or Consolidated Rail an option for terminating the agreement.

### C. Case or Controversy

#### 1. *Ripeness*

The rule on declaratory judgment requires that the case or controversy must deal with a real and substantial controversy with "sufficient immediacy and reality." *Md. Cas. Co.*, 312 U.S. at 273. The facts must not be hypothetical. *Id.*

Soo Line claims there is no controversy here because the facts remain unsure as to whether Norfolk Southern will terminate the contract and when. The Court disagrees. Norfolk Southern has shown a clear intent to terminate the Interchange Agreement by filing this suit and by sending a notice of termination to Soo Line. The notice specifically states that, if the Court rules that Norfolk Southern has the right to terminate the contract, it will immediately do so upon judgment. These aren't hypothetical facts where Norfolk Southern may terminate the Interchange Agreement in the future; instead Norfolk Southern is certain to terminate the Interchange Agreement if the Court finds it has the right to do so. Therefore, there is a controversy among the parties that is real and imminent.

---

[1] Interchange is the exchanging of rail traffic from one carrier to another for further transport over another carrier's network.

### 2. *Injury*

For a case or controversy to exist, there must be an injury that is redressable. The injury cannot be speculative and must be likely to be redressed by a favorable decision. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). Here, Norfolk Southern alleges an injury that is redressable and not merely speculative:

> [Soo Line's] use of the line impacts the capacity available for either NSRC's or another road's use of the line; [Soo Line] competes directly with [Norfolk Southern] for traffic [Norfolk Southern] could otherwise seek in a changing competitive and economic rail traffic environment; and, under [Soo Line's] interpretation, the [Interchange Agreement] would continue in perpetuity unless either [Soo Line] or the [Harbor Belt] decides to terminate. . . [Norfolk Southern] has the right to exercise reasonable business decisions to maximize its shareholder's return, to strategically plan market expansion or new marketing options and to control competitors' rights to use [Norfolk Southern's] own property against [Norfolk Southern's] interests. [Soo Line's] continued free use of [Norfolk Southern's] property is no longer in [Norfolk Southern's] interest.

(DE 43, Norfolk Southern Resp. to Soo Line's Mot. to Dismiss at 8–9).

These alleged injuries are real because the Interchange Agreement undermines the competition, impacts the capacity of the line, and the agreement continues into perpetuity.

Furthermore, a favorable judgment would redress the alleged harm by giving Norfolk Southern the right to terminate this contract.

### D. Primary Jurisdiction

The question of primary jurisdiction arises when "enforcement of [a] claim requires the resolution of issues which . . . have been placed within the special competence of an administrative body." *Pennington v. ZionSolutions LLC*, 742 F.3d 715, 719–720 (7th Cir. 2014).

Soo Line argues that the Standard Transportation Board has primary jurisdiction over this Case because the Interchange Agreement deals with tracks and interchange.

The Interstate Commerce Commission Termination Act of 1995 grants the Standard Transportation Board "exclusive and plenary" jurisdiction over acquisition, termination, and renewals of trackage rights. *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 321–23 (1981).

But this case is about Norfolk Southern's wish to terminate a contract—not to abandon or discontinue trackage rights. Of course, the contract impacts the tracks, but as the parties themselves acknowledged, the Interchange Agreement is a contract granting operating rights in connection with interchange; it does not grant trackage rights. The contract itself dispels any notion that it confers trackage rights: "[s]aid grant shall be considered a grant of operating rights and not trackage rights." (DE 29-1, Interchange Agreement §1). The Michigan Trackage Rights Agreement is the agreement granting trackage rights between Norfolk Southern and Soo Line not the Interchange Agreement.[2] The only contract Norfolk Southern is seeking to terminate is the Interchange Agreement. The two contracts are not interdependent. The Interchange Agreement is an independent grant of operating rights for interchange. The STB itself has said the contract portion of this case is rightfully in the District Court. (DE 45-1, Surface Transportation Board Decision at 4).

The Interchange Agreement deals specifically with interchange operating rights, thus falling outside the STB's jurisdiction. The STB has consistently stated that interchange agreements do not require any STB involvement or approval: "no [] Board authority is needed

---

[2] The Michigan Trackage Rights Agreement was submitted to the STB for approval. By admission of all parties, the Interchange Agreement was never submitted to the STB for approval.

4

for one carrier to use another carrier's track solely in connection with interchange." *Id.* The STB itself confirms that this case is "a declaration regarding NSR's rights to terminate a contract under Indiana law. That is a matter properly before the District Court." *Id.*

Therefore, since the Interchange Agreement is a contract regarding interchange and operating rights and not trackage rights, it does not fall under STB's exclusive jurisdiction.

### E. Conclusion

The Court finds that:

1. There is a case and controversy because Norfolk Southern has shown its concrete intent to terminate the contract if it is found to have the right to do so and there is a real and non-hypothetical injury that will be redressed through judgment on this case; and
2. This Court has proper jurisdiction over this case because it is a contractual dispute outside of the STB's jurisdiction and correctly within this Court's jurisdiction.

Therefore, the Court denies Soo Line's motion to dismiss.

SO ORDERED on September 27, 2019

                                                s/ Joseph S. Van Bokkelen
                                                JOSEPH S. VAN BOKKELEN
                                                UNITED STATES DISTRICT JUDGE