UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, a Virginia corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 2:17 CV 15<br>) |
| SOO LINE RAILROAD COMPANY, d/b/a CANADIAN PACIFIC RAILWAY, a Minnesota corporation, THE INDIANA HARBOR BELT RAILWAY COMPANY, an Indiana corporation, and THE CONSOLIDATED RAIL CORPORATION, a Pennsylvania corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION and ORDER

Before the court are two related motions: the motion of defendant Canadian Pacific Railway ("CP") for summary judgment (DE # 98), and the motion of plaintiff Norfolk Southern Railway Company ("NS") for judgment on the pleadings (DE # 98). As explained herein, both motions are denied.

**I.   BACKGROUND**

On June 2, 2005, two large, sophisticated railroad companies, NS and CP, executed an agreement called the Michigan Trackage Rights Agreement ("MTRA"). (DE # 101-3.) The MTRA, in part, gave CP access to an important Chicago rail intersection

called Control Point 502. (*Id.*) The agreement stated that the parties could renegotiate (or, simply terminate) the agreement no sooner than 2040. (*Id.* § 13(b).)[1]

When the parties signed the MTRA, CP could not make much use of Control Point 502 because four miles of track stood between Control Point 502 and Gibson Yard in Chicago, and CP did not have operating rights with respect to that section of track. The four-mile stretch was operated by the Indiana Harbor Belt Railway ("IHB"), and was owned in part by NS and in part by Consolidated Rail Co. ("Conrail"). (DE ## 101-5; 101-6.) Another agreement, the Indiana Harbor Belt Interchange Agreement ("IHBIA") was then formed, granting CP rights to use the four-mile section. (DE # 101-6.) CP and IHB were signatories to the IHBIA, while NS and Conrail executed the agreement as "consenting parties." (DE # 101-6.) The IHBIA stated an effective date of July 15, 2005, thirteen days after the MTRA was executed (*id.*), though there is some dispute about when various parties *actually* signed the agreement. (NS claims it executed at some point after November 19, 2005, and CR did not finally execute until 2007. (DE # 110-5.)) The IHBIA was terminable by either CP or IHB upon 90 days' notice, but no right of termination existed with respect to NS or CP, and no term limit was set for the agreement, generally. (DE # 101-6 § 11.)

In 2016, the parties underwent arbitration to resolve, amongst other things, whether CP was allowed to move oil pursuant to the MTRA and IHBIA. (DE # 101-8.)

---

[1] For the sake of simplicity, the court refers to the year 2040 as the MTRA's "expiration date," though technically renegotiation or an agreed extension could save the agreement from expiration.

CP prevailed, with the arbitrator concluding that NS could not limit or restrict CP traffic from entering or exiting the MTRA trackage via Control Point 502 based on commodity type, train type, or direction. (*Id.*) These findings were confirmed by a district court in the Northern District of Illinois on September 26, 2016. (DE # 101-10.)

Four months after the conclusion of arbitration, NS filed the present declaratory judgment action in this district court. (DE # 1.) In its complaint, NS asks the court to confirm that NS has the right to terminate the IHBIA upon reasonable notice, because the IHBIA contains no date of termination, rendering it a "perpetual contract" in violation of Indiana law and public policy. (DE # 1.) NS later filed a motion for judgment on the pleadings seeking the same. (DE # 96). Thereafter, CP filed a motion for summary judgment, asking for the court to determine that, under Indiana law, the IHBIA is *not* a perpetual contract and is subject to the 2040 expiration date set forth in the MTRA. (DE # 98.) All the motions are briefed, and ripe for ruling.

## II. LEGAL STANDARD

The motions at issue, which contain overlapping substance, were brought under two different procedural rules. NS's motion for judgment on the pleadings was filed pursuant to Rule 12(c). When reviewing such a motion, the court draws all reasonable inferences and facts in favor of the nonmovant. *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). CP filed its own motion under Rule 56, which governs motions for summary judgment. Under this rule, a party may obtain entry of summary judgment against their opponent when "there are no disputed issues of material fact

and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

Because this opinion is based primarily on matters of law and utilizes undisputed facts which are largely apparent from the pleadings, there is little practical difference as to how the court approaches the issues presented in these two motions. As explained in detail below, CP's arguments that it is entitled to judgment as a matter of law fail, leaving this case hinging on a factual determination regarding the duration of the IHBIA which prevents entry of judgment under Rule 56. This need for a factual determination also prevents NS from receiving a judgment as a matter of law pursuant to Rule 12(c). In short, neither party may succeed, as a matter of law, in this case. The court's analysis herein applies to the parties' arguments, whether made under Rule 56 or Rule 12(c), as in this case there is no meaningful difference, unless otherwise noted.

### III. DISCUSSION

#### A. Is the IHBIA a Perpetual Contract?

The first question to resolve in this case is whether the IHBIA is a perpetual contract. Indiana law, which the parties agree governs this dispute, disfavors perpetual contracts and will infer that the parties intended a reasonable termination point if none is stated. *See City of E. Chicago, Indiana v. E. Chicago Second Century, Inc.*, 908 N.E.2d 611, 623 (Ind. 2009).

CP argues that the IHBIA is not a perpetual contract because it is limited by the 2040 expiration date applicable to the MTRA. Under CP's view, the 2040 expiration date applies either because: (1) the MTRA and IHBIA are contemporaneous documents that

must be read together, or (2) a comment made in prior arbitration findings applies in this case via the doctrine of collateral estoppel, rendering the 2040 expiration date of the MTRA applicable to the IHBIA. Each of these arguments is explored below.

*1. The Contemporaneous Document Doctrine*

Under Indiana law, "[t]he contemporaneous document doctrine provides '[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract." *Gold v. Cedarview Mgmt. Corp.*, 950 N.E.2d 739, 743 (Ind. Ct. App. 2011) (quoting *Salcedo v. Toepp*, 696 N.E.2d 426, 435 (Ind. Ct. App. 1998)). Despite the doctrine's title, "[e]ven if they are executed at different times, they may still be construed together as long as they relate to the same transaction." *Id.*

The quintessential Indiana case on contemporaneous documents is *GEICO Ins. Co. v. Rowell,* 705 N.E.2d 476, 481 (Ind. Ct. App. 1999), in which the Indiana Court of Appeals construed a release and a stipulation as contemporaneous documents. In that case, a plaintiff, who intended to release only two of the four defendants she was suing, signed a general release. *Id.* at 478. Within the span of a few weeks, the parties realized that the general release applied to all four defendants, including GEICO, so the plaintiff's attorney drafted a stipulation providing that only two of the defendants (not including GEICO) were actually released. *Id.* All of the parties, including GEICO, signed the stipulation. *Id.* After the stipulation and release were filed with the trial court, GEICO asserted that it had been released from liability by the first document. *Id.*

at 479. The court held that, under the contemporaneous document rule, the release and subsequent stipulation had to be read in conjunction with one another. *Id.* at 481–482.

In this case, CP contends that the MTRA and the IHBIA are contemporaneous contracts and that, as such, they must be read and interpreted together. When they are read together, CP argues, the 2040 expiration date of the MTRA applies to the IHBIA. Under this theory, the IHBIA not a perpetual contract and the court would not need to delve further into determining when NS is permitted to terminate the contract—NS's involvement with the IHBIA would end in 2040. In support of its argument, CP points out that the IHBIA references the MTRA, stating: "CP has received trackage rights between Eastern Canada and CP 502 for Interchange with IHB." (DE # 101 Ex. 6.) CP also highlights numerous instances where NS (and CP) representatives mentioned the relatedness of the agreements. (*E.g.,* DE # 110 ¶¶ 17, 20, 29.)

NS, on the other hand, argues that the IHBIA *is* a perpetual contract with no stated duration and no termination provision for NS as there is for CP and IHB. NS argues that the MTRA and IHBIA should not be read contemporaneously, citing each contract's "standalone" clause, which provides that the agreement contains the entire understanding of the parties. (DE # 101-3 at 22; DE # 101-6 at 5.) NS further points out that the parties to the MTRA are meaningfully different than the parties to the IHBIA; while the former involves only NS and CP, the latter is an agreement between CP and IHB, with NS and Conrail being identified as "consenting parties."

It would be disingenuous to suggest that the MTRA and the IHBIA are not "related," or that the IHBIA was negotiated, drafted, and executed in an informational

vacuum where the parties never discussed or mentioned the MTRA. On the contrary, the two contracts are quite obviously "related," in the sense that some of the same parties overlap as signatories, they have effective dates within a span of a few weeks of one another, and they both pertain to use of railways in a particular region of the Midwest. Further, it is clear that the MTRA was not as useful to CP without the IHBIA.

But "related" contracts are not the same as "contemporaneous" contracts, as the latter term is used under Indiana law. Many documents are related, but not all are *so* related that the court will impose the terms of one document onto a second document as a matter of law. To do so is an extraordinary exercise of the court's power to bind parties to terms not explicitly agreed upon.

In this case, while the contracts have multiple layers of overlap and relatedness, their relatedness does not rise to the level of "contemporaneous" that existed in *Rowell*. Both of the documents in *Rowell* involved the same issue (the release of parties from liability), in the same lawsuit. In this case, the stretches of railway that are the subjects of the agreements are distinct. Further, the documents in this case have effective dates within a few weeks of one another, as was also true in *Rowell*, but the temporal separation in *Rowell* was due to ignorance and a second document was executed as a corrective measure once a mistake was realized. In this case, the fact that the documents have a gap of 13 days between effective dates is largely unexplained. Whether the contracts were separated in time because the IHBIA involved a negotiation and development process that was, at least in some ways, different and separate from the MTRA's process, has not been determined. Regardless, the distinctions between this

case and *Rowell* weigh against ruling that the contracts were "contemporaneous documents" as a matter of law.

Perhaps most significantly, though, the parties to the MTRA are not identical to the parties to the IHBIA. The Supreme Court of Indiana has remarked that "the contemporaneous document doctrine most likely will not apply" when a litigant is not a party to the two contracts at issue. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 753 (Ind. 2018). This is to avoid imposing contractual terms upon an entity who did not agree to those terms. *Id.* In that case, the court held that a hospital and medical group – while related entities – did not enter into "contemporaneous" contracts with an employee because the employee contracted with a different entity in each agreement. *Id.*

The Indiana Court of Appeals conveyed a similar skepticism when it noted that "the doctrine [of contemporaneous documents] should be applied cautiously when the documents involve different parties." *Murat v. S. Bend Lodge No. 235 of Benev. & Protective Ord. of Elks of U.S.*, 893 N.E.2d 753, 757 (Ind. Ct. App. 2008). In that case, a deed between the Elks and the Dockerys reservee an easement of unspecified width, but when the Dockerys conveyed their easement to the Murats, the easement was the specific length of 23 feet. When the Murats argued that the doctrine of contemporaneous documents should apply, the court found it persuasive that the Elks were involved in one transaction, but not the next piece of the larger contractual web. Noting that "[t]his court has been hesitant to apply the [contemporaneous documents] doctrine in this situation," the court reasoned that the lack of neatly-overlapping parties made it less likely that the two deeds constituted a "single transaction." *See id.*

In this case, the MTRA is signed by CP and NS, while the IHBIA was signed by CP and IHB, with NS and Conrail identified as "consenting parties." As in *Murat*, there is not a complete overlap between the two contracts, in terms of signatories. Further, the fact that NS was named as a "consenting party" and not an actual signatory to the IHBIA gives the court pause. Regardless, given Indiana's hesitation to apply the contemporaneous documents doctrine to contracts lacking symmetry with respect to the parties involved, the court finds that the difference between the parties in each contract in this case weighs heavily against finding that the IHBIA and MTRA are contemporaneous as a matter of law.

In analyzing all of the considerations to determine whether the documents in this case are "contemporaneous," *Murat* is instructional. Though there exist commonalities between the IHBIA and the MRTA in terms of subject matter in the sense that they involve abutting railway trackage, there was perhaps even more commonality between the deeds in *Murat* which involved exactly the same land easement. 893 N.E.2d at 757. *Murat* also involved two documents which were executed *the same day*, even closer in time than in this case. *Id.* Despite these indications of relatedness, the *Murat* court found it more persuasive that the parties to one deed were not identical to the parties to the second deed.  Like the parties to the two deeds in *Murat,* the parties to the IHBIA and MRTA do not neatly overlap, either. For this reason, and after weighing all of the factors mentioned herein, the court finds that the contemporaneous document doctrine does not apply in this case.

Before moving on to the next issue, one final note is in order. CP relies heavily on *City of East Chicago, Indiana v. East Chicago Second Century Inc.*, 908 N.E.2d 611, 624 (Ind. 2009), in arguing that the IHBIA is not a perpetual contract. This argument is misplaced. Before the court in *City of East Chicago* was a perpetual contract which one party wished to construe as "terminable at will." The Indiana Supreme Court held that the trial court properly declined to find the contract terminable at will, because under Indiana law the problem of a perpetual contract is solved by determining a reasonable end-point. In other words, the question of whether the agreement in *City of East Chicago* was a perpetual contract or not was not before the court. Determining whether a contract is perpetual is a distinct inquiry from determining what a reasonable end date is for a perpetual contract, and the latter issue will be discussed in more detail below.

   2. *Issue Preclusion*

CP next argues that the IHBIA is subject to the 2040 expiration date of the MTRA under the doctrine of issue preclusion. According to CP, an arbitrator previously found that the MTRA and IHBIA were "related," and this finding should apply in this case as well. This argument has no merit.

"Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP,* 976 N.E.2d 699, 704 (Ind. 2012). The doctrine of collateral estoppel has three elements: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the

privity of a party in the prior action. *Id.* Two additional considerations are relevant in deciding whether the defensive use of collateral estoppel is appropriate: "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.*

In this case, CP and NS previously participated in an arbitration involving the MTRA and the IHBIA. (*See* DE # 101-8.) In the arbitrator's findings of fact, the arbitrator stated that the IHBIA was "obviously related to the MTRA and plainly has an impact on the rights of [CP] under the MTRA." (*Id.* at 9.) However, the issue under consideration by the arbitrator was the definition of "operating rights" under the IHBIA. (*Id.*) The arbitrator noted that the MTRA employed a similar but different term, "trackage rights," and compared and contrasted the language of the two contracts. The arbitrator stated that the two contracts were "obviously related," but this phrase was employed to convey a matter of common sense; it was clearly not used as a term of art. At no point did the arbitrator determine the two contracts were "related" in any technical sense, much less under the "contemporaneous document" doctrine or in connection with any other legal principal which might aid CP in convincing this court that the IHBIA and the MTRA should be construed together as a matter of law. Identity of issues is a critical element of collateral estoppel. *See Nat'l Wine & Spirits*, 976 N.E.2d at 704. As this critical element is missing in this instance, collateral estoppel cannot apply.

### B. Determining the Duration of a Perpetual Contract

As explained above, the IHBIA itself expresses no duration, and the MTRA's 2040 expiration date cannot be superimposed onto the IHBIA through the contemporaneous document doctrine or via issue preclusion. Accordingly, the court must conclude that, at least for purposes of this opinion, the IHBIA is a perpetual contract.

As the Indiana Supreme Court has stated, "where the parties fix no time for the performance or discharge of obligations created by the contract they are assumed to have had in mind a reasonable time." *City of E. Chicago,* 908 N.E.2d at 623. Determination of the precise point at which a contractual obligation is terminated is a triable issue of fact which precludes a district court from deciding the issue as a matter of law. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Randall Div. of Textron, Inc.,* 5 F.3d 224, 230 (7th Cir. 1993). Accordingly, the court must deny both CP's motion for summary judgment and NS's motion for judgment on the pleadings, and this case must proceed to a fact-finder.

### IV. CONCLUSION

NS has moved for judgment as a matter of law on its own declaratory judgment action pursuant to Rule 12(c), but this motion must fail because the precise termination point of NS's obligations under the IHBIA is a triable question of fact. CP has moved for summary judgment under Rule 56, claiming it is entitled to a finding that the IHBIA is temporally limited by the 2040 expiration date of the MTRA, but the court cannot grant this motion because, as a matter of law, neither the contemporaneous document

doctrine nor principles of issue preclusion apply. In short, neither party is entitled to judgment at this stage.

Accordingly, the court **DENIES** NS's motion for judgment on the pleadings (DE # 96) and CP's motion for summary judgment (DE # 98). NS's related motion for leave to file a response brief (DE # 112) is **GRANTED.** The unrelated motion to withdraw as counsel (DE # 108) is also **GRANTED.**

The discovery and dispositive motion deadlines in this case have passed. The parties have previously engaged in settlement negotiations before Magistrate Judge Joshua P. Kolar (DE # 94), and have indicated that further settlement negotiations would "not be fruitful." (DE # 102.) Nevertheless, the parties are ordered to file a joint status report by **April 14, 2023**, regarding whether an additional settlement conference would be beneficial. If it would not, this case will be set for trial under separate order.

**SO ORDERED.**

Date: March 31, 2023

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT